We'll now move to the fourth case of the morning. This is Appeal No. 18-2934, United States v. Malcolm Carpenter, and we're going to begin, Ms. Noe Braun, with you. Ms. Noe Braun Good morning, Your Honors. May it please the Court, I'm Brittany Noe Braun of the law firm Denton's U.S. LLP. Echoing counsel's sentiment earlier, I'd like to thank the Court for holding these arguments today by telephone in light of the coronavirus pandemic. Mr. Carpenter is challenging his conviction at the District Court on three counts, the first being armed robbery, second, brandishing a firearm, and third, felon in possession. Mr. Carpenter is challenging these convictions based on ineffective assistance of counsel and on defective jury instructions that result in a miscarriage of justice, beginning with his ineffective assistance of counsel claim. Mr. Carpenter initially had a public defender who filed two motions that likely would have changed the outcome of the case had he remained his attorney and filed reply briefs. Filing a 2255 and trying to develop the claims more factually, in other words, this is, we just don't see this very often. And we have repeatedly advised criminal defendants that pursuing an ineffective assistance claim on direct review is something that they do at their own peril. Your Honor, I can represent that, that Mr. Carpenter has been made aware of this, however, not necessarily the new standard. I think I had potentially been under the misimpression that we would be under a de novo review here and that there's evidence in the record that supports his counsel, his trial counsel's action that I believe constitutes an effective assistance of counsel. One of the things that we've done in other cases, including in a panel that I sat on in that Kate's case, was we afforded appellate counsel, after oral argument, an opportunity to confer one final time with her client to be absolutely sure that they understand all of the legal perils of asking us to decide an effective assistance of counsel. And that is to say, to make an effective assistance of counsel case claim on direct review. Would you be open to that? I would be grateful for that opportunity. I certainly wouldn't want to waive any of Mr. Carpenter's rights without ensuring this is fully his knowing and decision. And you understand that you do not have to raise an ineffective assistance claim on direct review to in any way preserve it, to avoid waiver, to avoid forfeiture, anything like that, to then pursue it in 2255. In other words, you can remain completely silent on ineffective assistance on direct review and nonetheless raise it in a 2255 application. Do you understand that yourself clearly? I do understand that. However, I would appreciate the opportunity to confer with Mr. Carpenter and confirm his knowing decision. Okay. All right. I think that a point has been established and we're going to, at the close of business, allow that opportunity. I suppose at this juncture. Go ahead, Ms. Noe Brown. Did you want me to continue with it? With the explanation of these ineffective assistance of counsel claims? Or hold on that? I'm certainly interested in hearing what Judge Ripple and Judge Scudder have to say. I have seen in these circumstances that if obviously your client makes the determination that this is going to be his opportunity to offer argument, that this would be the time to do so. Judge Ripple, any thoughts on that? I think that we probably could hear counsel, but not act until we have her assurance or if she finds that her client prefers the 2255 group to simply have absorbed the claim. Absorb the time that we spend on this oral argument. Judge Scudder? I agree. We're all here. We can hear counsel on the point. Correct. So, Ms. Noe Brown, why don't you go ahead and we're going to add on a few minutes because we have taken some time on this issue. You can pursue your argument and then we will take the steps as we've described. Ms. Noe Brown. Okay. Thank you, Your Honors. That's very much appreciated. The core of the ineffective assistance of counsel argument here is that Mr. Carpenter's initial counsel filed two what I believe are very, very winnable motions. The first was a motion to sever the felon in possession count from the armed bank robbery and the brandishing of firearm count. The known prejudice that results from trying those together. And then the second was a motion to suppress evidence that was obtained through an excessive and illegal warrantless search of a hidden compartment of the vehicle that Mr. Carpenter was found in. Shortly after these motions were filed by his first attorney, the government was ordered to reply. In reply to the motion to sever, the government correctly pointed out that it's within the discretion of court in the circumstances to decide whether or not to sever. And Mr. Carpenter was directed to file a reply brief. On the motion to suppress evidence, likewise, the government pointed out one main flaw in Mr. Carpenter's initial brief, which is that he had failed to describe a right to privacy in the vehicle. And the government submitted a unforeseen statement of an FBI agent who said that Mr. Carpenter had conceded to trespassing in the vehicle. And the court directed Mr. Carpenter to submit a reply brief to address the privacy interest and specifically to submit an affidavit as well in response. Mr. Carpenter's new attorney met with him a few times and sought numerous extensions, your honors, 12 in total between these two motions. And then ultimately notified the court that Mr. Carpenter would not be filing this reply brief. And the result was the court adopting the government's position and acknowledging that Mr. Carpenter had trespassed in the vehicle and therefore didn't have a right to privacy and that the counts were properly joined. The unfortunate outcome here is that had Mr. Carpenter been able to file his reply brief, he would have been able to introduce sufficient evidence to demonstrate that he had a right to privacy in that vehicle and that the search that the government conducted of the vehicle was an improper search. It was a inventory search completed by the Homewood Police Department. Homewood Police Department inventory search policies do not permit the search of hidden compartments of a vehicle where the firearms were located. The government, I'd note, has tried to reclassify this as a search pursuant to the automobile exception and therefore potentially permissible to search the hidden compartment. However, I'd note that the Homewood Police Department describes this as an inventory search. They appear to follow the procedures for an inventory search with the exception of the search of the hidden vehicle, the hidden department in the vehicle, which was done by a Chicago Police Department official called in much later, hours later at the station. There's one FBI statement I believe that consists of search pursuant to the automobile exception. However, that the FBI was not conducting the search. It was the Homewood Police Department. So their definition of the search is an inventory search should govern here. With respect to the motion to sever, given the known prejudice here, I think that there's a reasonable chance that the court would have decided to sever the charges. Taking these two together, had the count of felon in possession been severed and had the evidence of the firearms evidence and the fingerprint evidence found on the firearms not been heard by the jury and admitted into evidence, there's a likely chance that Mr. Carpenter could have been found innocent on one or more of these counts. Therefore, I believe this amounts to ineffective assistance of counsel. Turning to Mr. Carpenter's second argument regarding jury instructions. The jury instructions in this case were prepared by the government. The first time that Mr. Carpenter reviewed and received these jury instructions was during the trial. And he received them and heard them from the court after a long day of trial. When reviewing the jury instructions with the court, with Malcolm Carpenter and the government, the court stated that the instructions were, quote, standard instructions that were, quote, used in just about every case. So through that lens, the court, you know, effectively discouraged Mr. Carpenter from challenging any of the instructions, and certainly he was not aware as a pro se litigant that he could add his own instructions. The following day at trial, significant evidence of his prior conviction for armed bank robbery was introduced both by Mr. Carpenter and by the government. And this was some of the last evidence that the jury heard before deliberating. The court did not give any sort of admonishment following that testimony that evidence of prior convictions should not be considered as evidence of Mr. Carpenter's guilt. And the jury instructions, they gave one boilerplate limited instruction that stated in instruction 12 of 20-something instructions that this evidence should not be considered as evidence of his guilt. And in light of the circumstances of this case and Mr. Carpenter's pro se status on the court's statement, these were standard instructions used in every case. I think in this circumstance, the law called for the court to sui sponte, give a jury instruction with stronger mitigating language to ensure that this highly, highly prejudicial evidence was not considered by the jury as evidence of his guilt. And I believe that could have also resulted in a different outcome. Thank you, Ms. Noe Brown. We're now going to move to counsel for the appellee, Ms. Kelly. May it please the court. Descendant did not receive ineffective assistance counsel for failing to file a reply brief in support of a motion to suppress. And the district court did not plainly err in denying the motion. Probable cause existed to search the Volvo for evidence of the bank robbery, given that a GPS tracking device tracked the stolen currency taken from the bank robbery to the Volvo's trunk. During initial searches of the vehicle, law enforcement found clothing worn by the robbers. The GPS device was taken from the bank during the robbery in a large amount of cash. And after searching other locations for the weapons, including the trail that the robbers took to the vehicle from the bank and the area around where the vehicle was parked, law enforcement had probable cause to continue to search the vehicle for the missing weapons. And that probable cause extended to any hidden compartments within the vehicle. As was described in the trial record, the FBI, after initial searches did not recover the missing firearms, called a Chicago police sergeant who came on scene. And at trial, the police sergeant testified about the method for this search, testifying that it took approximately 10 to 15 minutes. And what he testified he did was that he looked under the dashboard, saw what appeared to be a gun handle in plain view, determined that the space behind the radio was the likely location of those hidden weapons, and pressed on clips and ejected the radio and identified the two firearms. This was a straightforward search for where firearms could be found, and probable cause existed for that search. And the only argument that defendant appears to raise to argue that there was somehow not probable cause was a citation to a Homewood Police Department policy manual, which defendant argues suggests that an inventory search does not extend to hidden compartments. But as a threshold matter, this was a search under the automobile exception to the search warrant requirement. It was supported by probable cause. So regardless of what a Homewood Police Department manual said, the search was supported by law by probable cause. Defendant also suggested that the district court may have entered an order directing that defense counsel file an affidavit to address the next point of defendant's argument, which was the privacy interest issue. I did not see such an order from the district court directing that the defendant file an affidavit. But the defendant never made a record of any privacy interest in any event. The defendant argued only for the first time in reply in this appeal that there might have been some privacy interest. But that argument was not raised in the initial filing in support of a motion to suppress or in the initial brief filed on appeal. And for the reasons articulated in our brief and in the supporting case law we cited, defendant has not established an effective assistance of counsel for either a failure to file a reply brief in support of a motion to suppress or in connection with the motion to sever. Thank you, Ms. Kelly. Judge Ripple, any questions for Ms. Kelly? No, thank you. Judge Scudder? No, not for me. Thank you. Ms. Noe Brown, we're going to recognize you then. I believe you've got about two minutes left for rebuttal. Thank you, Your Honors. I would start by noting that Mr. Carpenter's privacy interest was raised in the initial appellate brief, explaining that he did have a right to privacy. However, he was never given the opportunity to explain it because he was never given the opportunity to file a reply brief. Instead, over his stringent objections, which are made clear in the record, Mr. Carpenter had intended to file a reply brief in a supporting affidavit explaining that he did have the right to privacy in the vehicle. I would direct the court to review the short appendix. I don't have the page number in front of me right now, but there is an order from the court directing that defendants file a reply brief and affidavit to support his motion contesting the evidence that should have been suppressed. With respect to the motion to separate and the jury conviction, I note that these were, as I previously stated, very, very winnable motions and, therefore, it was ineffective assistance of his counsel to not raise and pursue these petitions for his client. I would further note that Mr. Carpenter, though pro se, made every effort possible to preserve these motions on appeal to challenge his attorney's ineffective assistance of counsel. Though he never used those words at trial, it's clear through his repeated objections to his attorney not filing these motions and contesting the government's assertion that he trespassed in the vehicle come up over and over again. In light of his pro se status, I think this should be deemed sufficient to preserve the issue for appeal. Thank you, Ms. Noe Brown, and thank you, Ms. Kelly, each of you, for your advocacy. Ms. Noe Brown, you are court appointed, and you have the thanks of the court for your written and oral advocacy on behalf of Mr. Carpenter. We will issue an order, and I'm trying to think the time frame. Ms. Noe Brown, you're in Denver, correct? Correct. And do you know where Mr. Carpenter is currently detained? He's incarcerated in West Virginia, and I would note that due to the coronavirus pandemic, his access to telephones and the prison email system is restricted, I believe, to once a week. So I would ask your honors, if possible, for a week, I will do my best to see if I can get a hold of him much sooner than that, though. We'll give you more than that, hence my questions. Why don't we set it at two weeks, subject to any further continuances based upon the reason you've listed? Okay. That would be very appreciated. Thank you. Again, thank you to both counsel, and the case will be taken under advisement, subject to the filing that Ms. Noe Brown will be making in response to the colloquy towards the beginning of her argument.